**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
Email: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
MONIQUE REID,

Plaintiff, Case No. 26-7438

- against -

**COMPLAINT**

SNAXSATIONAL BRANDS LLC and PERFECT SNAX PRIME LLC,

Defendants.
---------------------------------------------------------X

## INTRODUCTION

1. Plaintiff, Monique Reid ("Plaintiff" or "Reid"), brings this action on behalf of herself against Snaxsational Brands LLC and Perfect Snax Prime LLC (hereinafter jointly referred to as "Snaxsational" or "Defendants"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to

the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff brings this civil rights action against Snaxsational for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendants are denying blind and visually-impaired persons throughout the United States with equal access to the products and services Snaxsational provides to their non-disabled customers through www.CookiePopCandyPop.com (hereinafter "CookiePopCandyPop.com" or "the Website"). Defendants' denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. CookiePopCandyPop.com provides to the public a wide array of the products, services, price specials, employment opportunities and other programs offered by Snaxsational. Yet, CookiePopCandyPop.com contains thousands of access barriers that make it difficult if not impossible for blind customers to use the website. In fact, the access barriers make it impossible for blind users to even complete a transaction on the website. Thus, Snaxsational excludes the blind from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind persons to fully and independently access a variety of products and services.

6. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means

that blind people are excluded from experiencing transacting with Defendants' website and from purchasing products from Defendants' website.

7. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendants have chosen to rely on an exclusively visual interface. Snaxsational's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on CookiePopCandyPop.com.

8. By failing to make the website accessible to blind persons, Defendants are violating basic equal access requirements under both state and federal law.

9. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York State law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10. Plaintiff is the mother of three children, ages 5, 6, and 13, who she regularly buys food and snacks for. As such, Plaintiff browsed and intended to make an online purchase of the 'Peanut Butter & Jelly – Grape Pop' and the 'Butterfinger Candy Pop' on CookiePopCandyPop.com. However, unless Defendants remedy the numerous access barriers on its website, Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction on CookiePopCandyPop.com.

11. Because Defendants' website, CookiePopCandyPop.com, is not equally accessible to blind consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Snaxsational's policies, practices, and procedures so that Defendants' website will become and remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and 28 U.S.C. § 1332, because Plaintiff is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 133(d)(2).

14. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendants conduct and continue to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

15. Defendants have been conducting business in New York State, including in this District. Defendants purposefully target and otherwise solicit business from New York State residents through the Website. Because of this targeting, it is not unusual for Snaxsational to conduct business with New York State residents. Defendants are committing these acts alleged herein in this District, have been and are violating the rights of consumers in this District, and have been and are causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District. Most courts support the placement of venue in the district in which Plaintiff tried and failed to access the Website. In *Access Now,*

*Inc. v. Otter Products, LLC* 280 F.Supp.3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim. Therefore, venue is proper in [the District of Massachusetts]." *Otter Prods*., 280 F.Supp.3d at 294. This satisfies Due Process because the harm – the barred access to the website – occurred here." *Otter Prods*., 280 F.Supp.3d at 293. Additionally, in *Access Now, Inc. v. Sportswear, Inc*., No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . . Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." *Sportswear*, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11. Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

**PARTIES**

16. Plaintiff, is and has been at all relevant times a resident of Kings County, State of New York.

17. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff, Monique Reid, cannot use a computer without the assistance of screen reader software. Plaintiff has been denied the full enjoyment of the goods, facilities, and services of CookiePopCandyPop.com as a result of accessibility barriers on CookiePopCandyPop.com.

18. Defendant, Snaxsational Brands LLC, is a Delaware foreign limited liability company doing business in New York State.

19. Defendant, Perfect Snax Prime LLC, is a Delaware foreign limited liability company doing business in New York State.

20. Snaxsational provides to the public a website known as CookiePopCandyPop.com which provides consumers with access to an array of products, including the ability to view the wide range of candy, cookie, and cereal brand popcorn products which can be purchased with the click of a mouse, and learn about promotions, among other features. Consumers across the United States use Defendants' website to purchase Defendants' products. Defendants' products are sold at many retailers throughout the country including retailers in this district. Defendants maintain dominion and control over how their products are sold at their partner retailers. Defendants' website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). *See Victor Andrews v. Blick Art Materials, LLC*, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. August 1, 2017).

## NATURE OF THE CASE

20. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

21. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, goods, and services contained therein.

22. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

23. Blind users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS," and Nonvisual Desktop Access, otherwise known as "NVDA," (jointly hereinafter as "screen readers") are currently the most popular, separately purchased and downloaded screen-reading software programs available for blind computer users. Plaintiff is an experienced screen readers user.

24. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.1 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader. Websites need to be accessible to the "least sophisticated" user of screen-reading software and need to be able to work with all browsers. Websites need to be continually updated and maintained to ensure that they remain fully accessible.

## <u>FACTUAL ALLEGATIONS</u>

25. Defendants control and operate CookiePopCandyPop.com. in New York State and throughout the United States.

26. CookiePopCandyPop.com is a commercial website that offers goods for online sale. The online store allows the user to browse and view the wide selection of candy, cookie, and cereal brand popcorn products offered for sale, make purchases, and perform a variety of other functions.

27. Among the features offered by CookiePopCandyPop.com are the following:

(a) Consumers may use the website to connect with Cookie Pop Candy Pop on social media, using such sites as Facebook, Twitter, Instagram, and Pinterest;

(b) an online store, allowing customers to purchase candy, cookie, and cereal brand popcorn products at the click of a mouse; and

(c) learning about the products and the company, reading reviews, learning about shipping and return policies, learning about the ingredients, and learning about promotions.

28. This case arises out of Snaxsational's policy and practice of denying the blind access to the products offered by CookiePopCandyPop.com. Due to Snaxsational's failure and refusal to remove access barriers to CookiePopCandyPop.com, blind individuals have been and are being denied equal access to Snaxsational, as well as to the numerous products and benefits offered to the public through CookiePopCandyPop.com.

29. Snaxsational denies the blind access to products and information made available through CookiePopCandyPop.com by preventing them from freely navigating CookiePopCandyPop.com.

30. CookiePopCandyPop.com contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down

menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

31. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on CookiePopCandyPop.com that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind CookiePopCandyPop.com customers are unable to determine what is on the website, browse the website or investigate and/or make purchases.

32. CookiePopCandyPop.com also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as CookiePopCandyPop.com, these forms include search fields to find products, fields to select pack size and quantity, fields to select add-ons, fields to select method of payment, and fields used to fill-out personal information, including address and credit card information. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendants' goods, nor can they enter their personal identification and financial information with confidence and security.

33. On CookiePopCandyPop.com, Plaintiff is not able to complete a transaction. Specifically, Plaintiff, using her screen readers, experienced the following problems when attempting to make a purchase on the Website:

**NAVIGATION:**

Several interactive controls on the homepage can **ONLY** be operated with a mouse. The Instagram image buttons at the bottom of the homepage **NEVER** receive keyboard focus and **CANNOT** be activated with keyboard controls. With a mouse, each button opens a pop-up displaying the social media post, its comments and a link to follow the brand on Instagram. Keyboard users are given **NO** route to the same content. Plaintiff was **UNABLE** to access the social media feature and was **UNAWARE** it existed.

The navigation menu toggle button does **NOT** announce its expanded or collapsed state. The hamburger menu button is announced as "Toggle drawer menu button subMenu", which does **NOT** convey whether the menu is currently open or closed. When the button is activated, the navigation menu opens visually and its submenu becomes visible, but **NOTHING** is announced to signal the change. Plaintiff could **NOT** determine the current state of the menu or what activating the button was expected to do. This is a critical error.

The "Search" feature is **NOT** accessible for screen readers. The "Search" button in the header opens a search pop-up that is **NOT** announced, and the button itself gives **NO** indication of this behavior. As text is typed into the search field, suggested collections, pages and products appear below it, but **NO** announcement indicates that this content has updated or become available, and **NO** instruction on the field explains how to reach it. After typing "Peanut", the screen reader announced "$8.50 Peanut Butter & Jelly – Strawberry Pop $8.50 Peanut Butter & Jelly – Grape Pop $8.50 Butterfinger Candy Pop View all" **UNEXPECTEDLY**, **WITHOUT** any explanation of what was being read. The suggested collections and pages were **NEVER** conveyed. Plaintiff could **NOT** tell that suggested content had appeared below the field or what the announced products represented.

The "Bag" link does **NOT** indicate that it opens a pop-up and does **NOT** announce the number of items in the bag. Focusing the "Bag" link in the header produces "Bag subMenu same page link", an announcement that gives screen readers **NO** warning that a pop-up will open. When the link is activated, the bag pop-up appears visually but is **NOT** identified as a pop-up. Once items have been added, the number of items is displayed visually on the control, yet focusing the link still produces the same announcement **WITHOUT** the item count. Plaintiff had **NO** way to know that the link opens a pop-up and was **PREVENTED** from accessing the item count shown visually.

There are **NO** controls to pause or stop moving content. The scrolling text region below the homepage banner scrolls continuously and updates the text it displays, and it **CANNOT** be paused or stopped.

One or more links and form fields are **NOT** labeled meaningfully. Two image links in the homepage banner are announced **IDENTICALLY** as "shop-all link", and **NONE** of the text displayed within the images is provided to screen readers. The first image displays "Limited Edition Holiday Flavors Now Available Shop Now" and the second displays "Now available Multipacks in every flavor Shop Now", but **NEITHER** message is conveyed when the links receive focus. Further down the homepage, an email input field is announced as "Email edit Email blank has auto complete" **WITHOUT** any indication of its purpose. The "Sign Up" and "Subscribe for news, product launches, recipes, and members-only offers" text displayed above the field is **NOT** associated with it and is **NOT** announced when the field receives focus. Plaintiff was **UNAWARE** that limited edition holiday flavors and multipacks were available, and could **NOT** determine what the email field was for or why they should enter an email address.

Filter buttons/controls are **NOT** accessible with the keyboard. Activating the filter control on collection pages with the keyboard has **NO** effect, even though it receives focus and is announced as "FILTER menu button subMenu". The filter options are **NOT** displayed and **NOTHING** is announced. When the same control is activated with a mouse, a filter pop-up opens containing numerous filter controls, and **NO** keyboard equivalent is provided to open it. Plaintiff was **PREVENTED** from filtering products on collection pages and from reaching the controls available to mouse users.

**SIZE, COLOR, SUBSCRIPTION, AND QUANTITY:**

The "Size guide" button on product pages is **NOT** labeled meaningfully, and the pop-up it opens is **NOT** announced. Focus on the "Size guide" button produces "SIZE menu button subMenu", which does **NOT** match its visible label and does **NOT** indicate that activating it displays a pop-up. Activating it brings up the size guide pop-up visually, and the screen reader **UNEXPECTEDLY** announces "Add to bag" instead of identifying what has opened. It was **NOT** clear to Plaintiff what the button was for, what had appeared on the page or where keyboard focus had moved.

Size options are **NOT** accessible. Selecting a new size on product pages **RESETS** keyboard focus to the start of the product page instead of leaving it on the size controls. The 2 pack, 6 pack and 12 pack options receive focus and can be selected, but each time a different size radio button receives focus, the same reset occurs, so Plaintiff could **NOT** simply move through the options to hear what was available. Plaintiff was **FORCED** to renavigate through the product page content back to the size controls after every option, which is **UNEXPECTED** and **ILLOGICAL**, and had to repeat these steps over and over to make a size selection.

**ADDING TO CART/NAVIGATING THE CART:**

The verbal notification given when a product is added to the cart is **NOT** meaningful. Adding a product to the bag from a product page produces the announcement "Add to bag Add to bag Add to bag Add to bag blank" and **NO** confirmation that the action succeeded. Focus actually moves into the bag pop-up, and **NO** "Add to bag" control is focused when the announcement is made, which is confusing and disorienting. Visually, the pop-up appears with the added item and the item count on the header bag control updates, but **NONE** of this is conveyed. Whether the product had been added, and what currently had focus, was **NEVER** made clear to Plaintiff. This is a critical error.

When the cart pop-up is displayed, it is **NOT** announced. **NO** announcement identifies the bag pop-up as a pop-up or conveys its purpose when it appears after a product is added, and the same silence applies when it is opened from the "Bag" link in the header. Visually, the pop-up opens with the added item listed in it, but that change is given **NO** spoken equivalent at the moment it is displayed. Plaintiff had **NO** indication that a pop-up had opened over the product page. This is a critical error which prevented Plaintiff from making purchases on the website.

After a cart action, focus **RETURNS** unexpectedly to the top of the cart pop-up. Each time a quantity control in the bag pop-up is used, keyboard focus is moved to the beginning of the pop-up and is **NOT** kept on or near the control. Focus is lost after every adjustment, and Plaintiff had to navigate back through the pop-up contents each time to reach the control again. Making several adjustments in a row was **NOT** possible **WITHOUT** repeating this navigation after each one.

Cart quantity adjustments produce an **UNEXPECTED** announcement and do **NOT** confirm the updated quantity or cart subtotal. Using the quantity buttons in the bag pop-up produces the announcement "Add to bag Add to bag", which does **NOT** indicate that quantity was adjusted and provides **NO** feedback for screen readers. The quantity value and the bag totals update visually after each adjustment, but this change is **NEVER** conveyed. Plaintiff had **NO** means of confirming that the adjustment had happened at all and was **UNAWARE** of the new quantity and totals.

Product names are **NOT** announced as users navigate through cart controls and the quantity controls are **NOT** properly labeled. Each item in the bag pop-up has controls announced **ONLY** as "Minus button", "Plus button" and "REMOVE button", **WITHOUT** the name of the product they belong to. The minus and plus buttons also carry **NO** label identifying them as quantity controls. When more than one item is in the bag, the controls for each product are announced **IDENTICALLY**. There was **NO** way for Plaintiff to tell which control adjusted or removed which product, or that the minus and plus buttons changed the quantity.

**CONTACT:**

There is **NO** contact page, contact link or contact information on the website. Searching the header and footer of the website turned up **NO** phone number, help or support email address, or page dedicated to contacting the business. **WITHOUT** any of these, a customer, including a screen reader user, **CANNOT** request assistance from the business. Plaintiff was given **NO** way to contact the company for help with an order or with using the website. Consequently, Plaintiff could not request an accommodation.

Consequently, Plaintiff was essentially prevented from completing a transaction on the Website.

34. Furthermore, CookiePopCandyPop.com lacks accessible image maps. An image map is a function that combines multiple words and links into one single image. Visual details on this single image highlight different "hot spots" which, when clicked on, allow the user to jump to many different destinations within the website. For an image map to be accessible, it must contain alt-text for the various "hot spots." The image maps on CookiePopCandyPop.com's menu page do not contain adequate alt-text and are therefore inaccessible to Plaintiff and the other blind individuals attempting to make a purchase. When Plaintiff tried to access the menu link in order to make a purchase, she was unable to access it completely.

35. CookiePopCandyPop.com also lacks accessible forms. Plaintiff is unable to locate the shopping bag because the shopping bag form does not specify the purpose of the shopping bag. As a result, blind customers are denied access to the shopping bag and to the ability to check out. Consequently, blind customers are unsuccessful in adding products into their shopping bags and are essentially prevented from purchasing items on CookiePopCandyPop.com.

36. Moreover, the lack of navigation links on Defendants' website makes attempting to navigate through CookiePopCandyPop.com even more time consuming and confusing for Plaintiff and blind consumers.

37. CookiePopCandyPop.com requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, CookiePopCandyPop.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on CookiePopCandyPop.com.

38. Due to CookiePopCandyPop.com's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some blind customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if CookiePopCandyPop.com was accessible, a blind person could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.1 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on Defendants' website in an attempt to reach the desired product. Thus, CookiePopCandyPop.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases on CookiePopCandyPop.com.

39. CookiePopCandyPop.com thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use CookiePopCandyPop.com and who

would otherwise be able to fully and equally enjoy the benefits and products of CookiePopCandyPop.com in New York State and throughout the United States.

40. Plaintiff, Monique Reid, has made numerous attempts to complete a purchase on cookiepopcandypop.com, most recently on October 9, 2026; October 28, 2026; and November 4, 2026, but was unable to do so independently because of the many access barriers on Defendants' website. These access barriers have caused CookiePopCandyPop.com to be inaccessible to, and not independently usable by, blind and visually-impaired persons. Amongst other access barriers experienced, Plaintiff was unable to make an online purchase of the 'Peanut Butter & Jelly – Grape Pop' and the 'Butterfinger Candy Pop' on Defendants' website. Moreover, if Defendants remove the access barriers that currently exist on the Website, Plaintiff will definitely visit the Website in the future to inquire about new and additional candy, cookie, and cereal brand popcorn products for delivery to her doorstep. Being blind shouldn't stop you from enjoying the snacks that people with vision can already buy. Plaintiff is the mother of three children, ages 5, 6, and 13, who she regularly buys food and snacks for. Plaintiff and her kids, like many people, enjoy sweet snacks throughout the day. She tries to find snacks she can stock in her home that she and her children would enjoy on a regular basis, but finding and purchasing these kinds of products in physical stores is incredibly challenging for Plaintiff, as a blind person. Arranging a commute to a store, navigating around the aisles among staff and other customers, and finally picking the right items out of the shelves among the thousands of other products in a store all prevent Plaintiff from making meaningful purchases without going through extreme hardship. Because of this, Plaintiff buys snacks online, so she can have them delivered directly to her home. Like most blind people, Plaintiff relies on social media for product recommendations. While browsing on her feeds, Plaintiff came across Defendants' brand and was highly interested in Defendants' products. Defendants sell popcorn snacks in a

wide range of unique flavors that combine the traditional flavors of popcorn with cookies, candy, and dessert flavors including Cookies & Cream, TWIX, M&M's, Snickers, Butterfinger, and peanut butter and jelly by Jif and Smuckers, among many others that Plaintiff finds appetizing. Plaintiff has been a fan of kettle corn and other sweet popcorn flavors since she was a young girl, so she was elated to discover a brand that combines candy and sweet flavors with popcorn in a novel and unique way. She also knows that her kids love candy and other sweets and she believes this is a better alternative for her kids than just buying those candies, as it will satiate their cravings for sweet foods without her kids being introduced to the full health consequences of eating an entire candy bar when they want something sweet. Defendants' range of flavors also made Plaintiff want to try each one to see which ones she will continue to buy moving forward, as each of her kids have different preferences and she anticipates having to purchase a range of products to satisfy all three of them. Plaintiff also loved that Defendants regularly release new limited-time flavors, which allows Plaintiff to periodically try new products that do not exist anywhere besides Defendants' brand, thereby ensuring that Plaintiff could use Defendants' website as a resource for new and interesting snacks in the future and always have something new to try. As such, Plaintiff was eager to make purchases on Defendants' website. Plaintiff wanted to purchase directly from Defendants' website to ensure product authenticity and to access Defendants' entire product lineup. Unfortunately, Defendants' website was inaccessible, and remains inaccessible, thereby deterring Plaintiff from making purchases. If Defendants' website were accessible to the blind, Plaintiff would return to Defendants' website to complete the purchases she originally tried to make. She would also return to Defendants' website to replenish her supply of Defendants' snacks, which she intends to consume regularly and which she anticipates her kids eating all the time. Moreover, Plaintiff would like to return to Defendants' website to explore the wide range of products currently available, as well as to view

and purchase new flavors that Defendants release in the future, as they regularly introduce new and limited-edition flavors on their website. Plaintiff is particularly interested in returning to Defendants' website to purchase the 'M&M's Candy Pop.' Plaintiff has purchased snacks from other (accessible) online vendors, but Defendants' unique flavors incorporate real, well-known candies and other ingredients from brands that are household names, which cannot be said about other popcorn snack brands, and which Plaintiff finds particularly appealing. This distinguishes Defendants' brand from its competitors. Unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to make a purchase can only be attributed to access barriers (whereas for brick-and-mortal locations it can be attributed to proximity, travel time, etc.). *See Sanchez v. Nutco, Inc.*, 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022) (citing *Quezada v U.S. Wings, Inc.*, 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021)). Determining whether a website accessibility complaint properly alleges whether plaintiff lives in "close proximity" to a specific location makes no sense when goods can be browsed, bought, and delivered to Plaintiff's home through a website. Likewise, factual considerations of an intent to return regarding a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021). Plaintiff made numerous attempts to make purchases on the website during October and November 2026 without success and will definitely make purchases of additional products, including the new products that are regularly added to the website, amongst many other products which are sold on the website and which currently cannot be purchased by blind persons.

41. As described above, Plaintiff has actual knowledge of the fact that Defendants' website, CookiePopCandyPop.com, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

42. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits, goods, and services of CookiePopCandyPop.com.

43. Defendants engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained a website that is inaccessible to Plaintiff with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to Plaintiff; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff.

44. Defendants utilize standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

45. Because of Defendants' denial of full and equal access to, and enjoyment of, the goods, benefits and services of CookiePopCandyPop.com, Plaintiff suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendants' conduct.

## FIRST CAUSE OF ACTION

(Violation of 42 U.S.C. §§ 12181 *et seq.* – Title III of the Americans with Disabilities Act)

46. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 45 of this Complaint as though set forth at length herein.

47. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full

and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

48. CookiePopCandyPop.com is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7).

49. Defendants are subject to Title III of the ADA because they own and operate CookiePopCandyPop.com.

50. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

51. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

52. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

53. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

54. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendants' business nor result in an undue burden to Defendants.

55. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder. Patrons of Snaxsational who are blind have been denied full and equal access to CookiePopCandyPop.com, have not been provided goods and services that are provided to other patrons who are not disabled, and/or have been provided goods and services that are inferior to the goods and services provided to non-disabled patrons.

56. Defendants have failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

57. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of

CookiePopCandyPop.com in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. and/or its implementing regulations.

58. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

58. The actions of Defendants were and are in violation of the ADA, and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

60. Plaintiff is also entitled to reasonable attorneys' fees and costs.

61. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION**
(Declaratory Relief)

62. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 101 of this Complaint as though set forth at length herein.

63. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendants deny, that CookiePopCandyPop.com contains access barriers denying blind customers the full and equal access to the goods, services and facilities of CookiePopCandyPop.com, which Snaxsational owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*.

64. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendants from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*.;

b) A preliminary and permanent injunction requiring Defendants to take all the steps necessary to make its website, CookiePopCandyPop.com, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that CookiePopCandyPop.com is readily accessible to and usable by blind individuals;

c) A declaration that Defendants own, maintain and/or operate the website, CookiePopCandyPop.com, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*.;

d) An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

e) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff for violations of their civil rights under the ADA;

f) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

g) For pre- and post-judgment interest to the extent permitted by law; and

h) For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
November 18, 2026

SHAKED LAW GROUP, P.C.
Attorneys for Plaintiff

By:*/s/Dan Shaked*__________

Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
e-mail: ShakedLawGroup@Gmail.com